# KNEELAND *v.* LAWRENCE.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 333.   Argued April 21, 1891. — Decided May 11, 1891.

A *bona fide* purchaser, before maturity, of coupon bonds of a railroad company payable to bearer, takes them freed from any equities that might have been set up against the original holder; and the burden of proof is on him who assails the *bona fides* of such purchase.

Tested by this rule appellant's case must fail.

THE case is stated in the opinion.

*Mr. John M. Butler* for appellant.

*Mr. George T. Porter* for appellees.

MR. JUSTICE LAMAR delivered the opinion of the court.

This case is one of a large number involving litigation growing out of the foreclosure of a mortgage upon the Toledo, Cincinnati and St. Louis Railroad of Ohio, Indiana and Illinois.

The facts necessary to an understanding of the question at issue, briefly stated, are as follows : The Frankfort and Kokomo Railroad was a road of about twenty-five miles in length, run-

ning from Frankfort to Kokomo, Indiana. On the 1st of January, 1879, the company owning the road issued two hundred bonds of $1000 each, bearing seven per cent interest, payable semi-annually and due in thirty years, and, to secure the payment thereof, executed a mortgage upon its property to the Farmers' Loan and Trust Company. Subsequently, by consolidation, that road became a part of the road of the Toledo, Cincinnati and St. Louis Railroad Company of Indiana and Illinois. On the 23d of July, 1881, the latter company issued 3000 bonds of $1000 each, bearing six per cent semi-annual interest, and due July 1, 1921, and, to secure their payment, executed to the Central Trust Company of New York and Thomas A. Hendricks a mortgage on that portion of its road running from Kokomo, Indiana, to East St. Louis, Illinois. Two hundred of these bonds were set aside to trustees, to be exchanged at par value for the original Frankfort and Kokomo bonds. One hundred and thirty of those bonds were so exchanged, the holders of the other seventy of them refusing to make the exchange.

Default having been made in the payment of interest upon the new bonds, the mortgage was foreclosed, the foreclosure decree being entered November 12, 1885. By this decree it was found that seventy of the Frankfort and Kokomo bonds were outstanding, and that there was due thereon the sum of $85,108.12; and it was decreed that that sum should be paid out of the proceeds of the foreclosure sale, next after the payment of the court costs and master's fees. The foreclosure sale took place December 30, 1885, and the appellant herein, Sylvester H. Kneeland, became the purchaser of the entire line of road from Kokomo to East St. Louis. The sale was confirmed on the 5th of February, 1886, and on the 10th of March following a deed was executed and delivered to the purchaser.

Under an order of court of December 30, 1885, it was provided that all claims which should be filed in court against the railway, or the fund arising from the sale thereof, should be referred to W. P. Fishback, a master of the court. On the 23d of July, 1886, the master reported that the appellees herein,

Lawrence Brothers & Co., had produced six Frankfort and Kokomo bonds (numbers given) with coupons attached; that said bonds were owned by S. Newton Smith, but were held by Lawrence Brothers & Co., as collateral security for advances made by them to Smith; and that there was due on said bonds the sum of $8883.16, to which should be added $1.26 per day from July 22, 1886, until they should be paid.

Exceptions were filed to the master's report by the appellant, but they were overruled, the report was confirmed and a decree was rendered in accordance therewith. An appeal from that decree brings the case here.

The ground upon which payment of these bonds was resisted, and, therefore, the ground upon which this appeal is based, is, that they are not part of the seventy bonds that were not exchanged for Toledo, Cincinnati and St. Louis bonds, but are part of the one hundred and thirty bonds that were so exchanged, and have been, therefore, fully paid and satisfied.

The evidence before the master, and which is set out in this record, shows that the appellees, as brokers, purchased these six bonds for Smith from George William Ballou & Co. Ballou & Co. had obtained possession of three of the bonds from Edward Le Conte, giving him in exchange three Toledo, Cincinnati and St. Louis bonds, two income bonds, one of $1000 and the other of $500, and thirty shares of stock in the Toledo, Cincinnati and St. Louis road. Where they obtained the other three the record does not show.

The argument for the appellant is, that Ballou & Co. were the financial agents of the Toledo, Cincinnati and St. Louis road, and that, therefore, it must be presumed that the Frankfort and Kokomo bonds held by them were a portion of the one hundred and thirty bonds that had been exchanged for a like number of Toledo, Cincinnati and St. Louis bonds, and were, therefore, fully paid and satisfied.

We cannot assent to this proposition. The record shows that the Central Trust Company of New York and Thomas A. Hendricks were the agents of the Toledo, Cincinnati and St. Louis road for the exchange of two hundred of its bonds

for the Frankfort and Kokomo bonds; and nowhere in the record is there any intimation that Ballou & Co. had any connection whatever with such agency. Admitting, as is claimed by the appellant, that Ballou & Co. were the financial agents of the Toledo, Cincinnati and St. Louis Company, it does not follow by any means that they might not have been in the *bona fide* possession of a portion, or even all, of the seventy unexchanged Frankfort and Kokomo bonds. There was certainly nothing to prevent Ballou & Co. from purchasing all of those seventy bonds from the holders of them and disposing of them as they saw fit. The three bonds which they obtained from Le Conte cannot be considered as having been exchanged for a like number of Toledo, Cincinnati and St. Louis bonds at par value; for they not only gave Le Conte a like number of bonds, but, as an inducement to such transfer, gave him, in addition, two income bonds amounting to $1500, and thirty shares of stock. Such a transaction is more in the nature of a negotiation and sale than an exchange, as contemplated by the original arrangement for an exchange of bonds.

In fact, there is nothing whatever to show, or even to indicate, that these six bonds were not part of the seventy bonds that were not exchanged, but were given a priority of lien by the foreclosure decree. On the contrary, the best of reasons exist for holding that they were not part of the one hundred and thirty bonds; for, according to the statement of counsel for appellant, which is borne out by the record in *Kneeland* v. *American Loan Co.*, 136 U. S. 89, those one hundred and thirty bonds were taken up and cancelled, whereas these six bonds do not appear to have ever been cancelled. They must have been, therefore, a part of the seventy bonds. The evidence shows clearly that Smith was a *bona fide* purchaser of them, and it does not show that the appellees are not *bona fide* holders of them. Coupon bonds like those in suit, payable to bearer, pass by delivery; and a *bona fide* purchaser of them before maturity takes them freed from any equities that might have been set up against the original holders of them. The burden of proof is on him who assails the *bona fides* of such purchase. *Murray* v. *Lardner*, 2 Wall. 110, 121, and cases there cited.

Tested by this rule, the appellant's case must fail. As already stated, there is nothing to show that these six bonds. are not part of the seventy unexchanged ·Frankfort and Kokomo bonds, and nothing to show any *mala fides* on the part of Smith and the appellees in obtaining possession of them. *Decree affirmed.*

Mr. Justice Bradley was not present at the argument, and took no part in the decision of this case.