MENDENHALL LUMBER COMPANY ET AL. v. STATE BANK OF
McHENRY.

[54 South. 883.]

1. EQUITABLE MORTGAGE. *Suit to foreclose. Decree. Part of debt not due.*

A decree in a suit to enforce an equitable mortgage, securing purchase money notes given for land, is erroneous where it embraces a part of the debt not due at its rendition.

2. PROMISSORY NOTES. *Contract extending date of maturity. Failure to pay interest due.*

Where by a supplemental contract the date of the maturity of the principal of a promissory note was extended and provision made for the payment of interest thereon annually, the note and the contract being parts of the same transaction, a failure to pay interest when due and other matured notes, given for the same consideration, does not, in the absence of a contract to that effect, mature the principal of the extended note.

3. SAME. *Same. Right of maker to have extension written on note.*
    Where by the terms of a supplemental agreement the maturity of
        the principal of a promissory note was extended and provision
        made for the payment of the interest at stated times, the note
        and the contract being parts of the same transaction, the payee
        is entitled to have evidence of the extension written on the note
        so as to protect himself from an innocent endorsee.

4. SAME. *Same. Tender of sum due. Suit. Limit of recovery. Costs.
    Attorney's fees.*
    Where a part only of a promissory note is due, and the maker's
        offer to pay the sum due, coupled with a request that the payee
        place evidence on the note of the extension as to the balance,
        was rejected and suit was brought on the note, the payee can re-
        cover only the sum due, without costs, although the note provides
        for the payment of an attorney's fees in case of suit.

FROM the chancery court of Simpson county.

HON. ROBERT E. SHEEHY, Chancellor.

The bank, appellee, was complainant in the court below; the
lumber company and others, appellants, were defendants there.
From a decree in complainant's favor defendants appealed to
the supreme court.

Complainant bank, on June 12, 1908, sold lands with the
improvements and appurtenances thereon to the members of a
partnership doing business under the firm name of Welch &
Harrison, for a consideration of $18,000; $1,000 was paid cash
and notes were executed for the balance. Eleven notes were
given each for $500, one of which was made payable at the end
of each month for eleven months following the date of the sale.
A note for $1,500 was given, maturing twelve months after date,
and the balance, $10,000, was evidenced by a note due on de-
mand one year after date, and a lien was reserved in the deed
of conveyance for the security of the notes. On the same day
the notes were executed, and as a part of the same transaction,
the parties entered into a supplemental contract, whereby it was
agreed that the maturity of the principal of the $10,000 should

be extended two years, but providing that interest thereon should be paid annually. The eleven $500 notes were paid and at the maturity of the $1,500 note the debtors offered to pay it and also offered to pay $800, the amount of the interest then due on the $10,000 note, the offers being coupled with a demand that the payee should place evidence on the $10,000 note of the extension previously granted on its principal. This offer was refused. Thereafter this suit was instituted by the complainant bank to enforce its equitable mortgage not only for the sum due on the $1,500 note and the $800 interest due on the $10,000 note, but as well for the principal of the $10,000 note. The court below adjudged that there had been a breach of the supplemental contract and enforced the lien for the entire demand.

Welch & Harrison, the makers of the notes, had, before the beginning of the suit, sold the lands and property, purchased by them from the complainant, to the Mendenhall Lumber Company, and the suit was against the lumber company as well as Welch & Harrison.

*Currie & Currie,* for appellants.

The two instruments, the deed and the supplemental agreement, having been executed at the same time, relating to the same subject matter, and being between the same parties, are parts of the same contract, and this litigation being between the original parties to the contract, the law will construe the two instruments as one, and being so construed it is apparent from the language used that it was the intention of the parties to extend the date of the payment of the principal of the $10,000 note for two years from the 12th day of June, 1909, until the 12th day of June, 1911, and the principal of the $10,000 note not being due at the time of the rendition of the decree, it is erroneous as to the principal of said note. 3 Mich. (Gibbs) 615, is decisive of this point; 3 Am. St. Rep. 162; 7 N. W.

687; 13 Am. St. Rep. 344; 100 Am. Dec. 211; 20 Am. Dec. 518, and 7 Smed. & M. 319; Bishops on Contracts, 148, par. 382; Lawson on ·Contracts, 419; 8 Cyc. 965.

The agreement extending the date of the payment of the principal of the note is a bar to a suit therefor until after the expiration of. the time to which extended, and this bar appears on the face of the bill of complaint. *Robsin v. Godfrey,* 2 Mich. 408; 20 Tex. 311; 59 Cal. 442; 3 Mich. 615; 21 Am. Dec. 328; 36 Am. St. Rep. 142; 17 Am. St. Rep. 464, 82 Me. 34; 19 Atl. 89; 27 Minn. 384; 7 N. W. 687.

*McWillie & Thompson* and *Ford, White & Ford,* for appellee.

Welch & Harrison could not breach the supplemental agreement and at the same time claim its benefits, but they seem to hope that by showing that the terms of the same were in reality part and parcel of the original contract of sale to make the case in substance one of a default in payment of the annual interest on a three years' note, and so defeat the foreclosure on the $10,000 note for everything except the $800 of accrued interest.

It will be observed that the supplemental agreement begins by referring to the contract of sale and conveyance as already executed, and a second time refers to it as executed at an earlier hour of the same day.    This agreement was evidently carefully conned by Welch & Harrison, for the copy filed with the bill of complaint was certified by them as being a true copy.    It is plain, definite and unambiguous in its terms and complete in itself.    Parol evidence being incompetent to vary an instrument of this nature, the testimony of Welch and Harrison as to negotiations preceding the execution of the agreement is incompetent; but it will be noted that the instrument is never mentioned by them except as a "supplemental agreement"' and that while they claim that by the terms of the original contract of sale they were to have three years to pay the $10,000 note,

it is not pretended that there was ever an agreement on the part of the complainants to accept a three years' note, but only to extend a one year note for two years. It is rather too much to ask us to believe that the vendor, under the circumstances here appearing, agreed at the outset to extend a one year note for two years, when the natural method, uniform in all such transactions, would have been an agreement to accept a three years' note. It is quite plain from appellee's letter of May 25, 1908, that while appellee was not disposed to exact the whole price of the property in cash, it did not propose to carry the $10,000 note or any part of the purchase money longer than twelve months.

In the answer on which the case was tried the defendants, Welch & Harrison after setting out the alleged negotiations preceding the execution of the supplemental agreement proceed to state "the sense of said stipulation" as understood by them, but admitting the correctness of the same as exhibited with complainant's bill, and nowhere claim that its execution was attended by any *mistake or fraud.* Clearly their testimony was incompetent, but even if it were treated as competent it is accompanied by so many weaknesses and inherent defects that it should not prevail over the terms of the writing. *Wren v. Hoffman,* 41 Miss. 616; *Kerr v. Kaykendall,* 44 Miss. 137; 9 Ency. Evidence, p. 325.

The rule excluding parol evidence to vary the terms of contracts in writing is not one of evidence, but one of substantial law. This is the doctrine expressed by Wigmore, who says:

"It does not exclude certain data because they are for one or another reason untrustworthy or undesirable means of evidencing some fact to be proved. It does not concern a probative mental process—the process of believing one fact on the faith of another. What the rule does is to declare that certain kinds of fact, one legally ineffective in the substantial law; and

this, of course (like any other ruling of substantial law), results in forbidding the fact to be proved at all." 4 Wigmore on Evidence, § 2400; Vide also 9 Ency. Evidence, p. 326.

Certainly the court will not decide that the chancellor erred in holding to the clear, plain, definite and unambiguous instrument, complete in itself, rather than the incompetent and uncertain testimony by which it was sought to vary it, evidence of facts which a substantial rule of law forbade to be proved in any way.

Moreover, the objection is founded upon a misconception of the law. While one may not discredit his own witness by showing interest or the like, it is no objection to any relevant evidence of the material facts on which he relies to support his case or defense that it may incidentally contradict or discredit his own witness. *Fairley v. Fairley,* 38 Miss. 280, 30 Am. & Eng. Ency. of Law (2d ed.), 1129.

Treating the agreement as one made after the execution of the contract of sale and modifying its terms, it is material to inquire into the nature of the agreement. Such inquiry at once develops the fact that each of the parties to the sale agreed to a particular thing, the vendor to extend the maturity of the $10,000 note for two years and the vendee to pay the interest on this note annually. If the payment of interest annually was not the consideration of the agreement to extend, the agreement was a *nudum pactum,* and that the extension was to be conditional upon the payment of the interest is too plain for comment. We submit as a matter of law that after the breach of this agreement by the failure to pay the annual interest when it fall due, Welch & Harrison were not longer entitled to the benefits of the agreement and could not claim that the note did not mature for two years. It will be observed that this is not the ordinary case of a note, the interest of which is on its face payable annually until maturity. On the contrary it is a case

where one then holding a twelve months' note agrees before maturity to extend it so as to make it a three years' note on consideration that the maker does a particular thing, that is to say, pays the interest annually. If the maker in such case should pay the annual interest as it falls due he becomes entitled under his subsequent and supplemental contract to the extension provided for by its terms, but, failing or refusing to pay the interest, he breaches and abandons his contract and we know of no principle of law, logic or sound morals upon which he can rightfully claim that the extension of the note remains operative.

The appellants advance very peculiar arguments to uphold their interpretation of the agreement. They point out that the extension without the special stipulation as to the annual payment of interest would have left all interest payable three years after the date of the note, and in the same breath claim that the provision for the payment of interest annually and the breach thereof in no wise affected the extension of the note. In other words, that the nonperformance of the condition upon which the extension was given had no effect upon the extension, although the extension was itself a change in the existing contract and an extension without such condition would have been a wholly different contract from an extension with it, besides having no consideration to support it. Appellants also in the effort to vary the terms of the agreement advance the singular reason that the parties to it were all experienced and cautious business men, and too, strangely enough, quote from the agreement the words providing that the $10,000 note should mature "not later than January 12, 1911." As the agreement had already provided for a two years' extension in plain terms from June 12, 1909, these words "not later" indicates that in the contemplation of the parties the note might mature before June 11, 1911, as for the non-payment of interest annually.

Of a like nature is the argument founded on appellee's letter written after the agreement for an extension had been breached and abandoned in which to settle the matter it proposed to split the $10,000 note and take two notes for $5,000 each, payable in one and two years respectively. How this concession, made to avoid further controversy could inspire in appellants the confidence exhibited in their brief is beyond conjecture. The proposition was not accepted by appellants and the right of the appellee to continue to treat the $10,000 note as due remained unimpaired.

No one can doubt that had the supplemental agreement never been executed the appellee would have been entitled to foreclose for the principal of the $10,000 note. The appellants are compelled to rely upon that agreement, but they never performed the condition upon which it was based. The substance of the agreement is in effect that an extension was thereby given, but that the interest should be paid annually. In other words, the one party gave the extension if the other paid the interest, and it is immaterial whether we treat the agreement to pay the interest annually as a condition precedent or subsequent. Unless a contrary intention is manifested by the terms of a contract, stipulations in the instrument will be construed as dependent, for the non-performance of a condition subsequent shows such an abandonment of the contract by the delinquent as releases the other party from any duty to further recognize its obligations. 7 Am. & Eng. Ency. of Law (2d ed.) 121–122.

An agreement for the extension of a mortgage debt must be supported by a valid and sufficient consideration, and not cancelled or abandoned. *Kester v. Hulman,* 65 Ind. 100; *Ely v. Ryan* (Neb.), 35 N. W. 225; *Priest v. Comprecht* (N. Y.), 70 N. E. 1108.

The claim of appellants that a sufficient tender was made by them of the $1,500 note and interest and the interest on

the $10,000 note, and that the appellee is bound by the pretended waiver of its right to treat the latter note as mature, needs no further answer than the record itself. There can be no doubt that Welch & Harrison never made any tender except one based upon the condition that appellant would authorize the indorsement on the $10,000 note of the words "extended for two years," which they well knew it had refused to make, and would not make. The testimony of Hauenstein, the cashier of the Hattiesburg bank shows this with perfect clearness, and the testimony of this wholly disinterested witness is supported by the contemporaneous correspondence.

The extreme anxiety of Welch & Harrison to get this endorsement on the note shows that they recognized the fact that after failing to pay the interest annually they were not entitled to any extension under the contract. It will be noticed that these very arbitrary debtors not only refused to pay the interest on the $10,000 note, except upon the condition above stated, but also refused to pay, except upon the same condition, the $1,500 note and interest, touching the maturity of which note there was no dispute. A tender to be good must be unconditional. 38 Am. & Eng. Ency. of Law (2d ed.) 31; *Harmon v. Mayer,* 57 Miss. 410. It must not only be unconditional, but must be made at the proper time. 2 Jones on Mort. (5th ed.), § 1088, pp. 47, 48.

The agreement in writing to extend a mortgage note is not a defense to a proceeding to foreclose brought before the expiration of the period of extension, the remedy for the violation of such an agreement being an action for damages. 13 Am. & Eng. Ency. of Law (2d ed.) 818, and cases cited in note 8.

WHITFIELD, C.

The agreement, Exhibit A to the bill, and the supplemental agreement, Exhibit D to the bill, were both executed on the

12th day of June, 1908, as parts of one and the same contract, and are to be treated as one and the same contract.

(1) On the face of these two instruments, which are one, it is clearly shown that the $10,000 note was not to fall due, so far as the principal was concerned, for three years from date, or two years after one year from its date. The suit was, therefore, manifestly premature, so far as the $10,000 was concerned. The notes, which are exhibits to the bill do not provide, as was provided in the case of *Caldwell v. Kimbrough*, 91 Miss. 877, 45 South. 7, that default in the payment of any of the interest should authorize the holder to declare the whole indebtedness due, and that case, therefore, is wholly out of point here. The testimony as to what occurred at the time of the attempted settlement shows conclusively that the appellants delivered to the appellee a check for the whole of the $1,500 note and the interest on it, and another check for $800, the annual interest due on the $10,000 note. Under the contract, this was all then due the appellee, and it should have accepted these checks and proceeded accordingly. The appellee was not entitled, therefore, manifestly, to either any attorney's fees or any costs.

(2) The request made by the appellants that the appellee should indorse on the $10,000 note that its maturity had been extended for two years, until June 12, 1911, was merely asking that that should be done which the contract already secured to them, and was a very reasonable request, in view of the fact that, had the $10,000 note gotten into the hands of innocent purchasers for value without notice, the note not showing such extension, the appellants could not have defended under our anticommercial statute. Code 1906, § 3503.

PER CURIAM. The above opinion is adopted as the opinion of the court, and, for the reasons therein indicated, the decree is reversed, and the cause remanded, with instructions to enter

a personal decree below against the appellants in favor of the appellee for the $1,500 note and interest, and the $800 of interest due on the $10,000 note, but taxing complainant below with all the costs, and denying it any attorney's fees.

*Reversed.*